Thank you, Your Honor. John Desmond from Jones Vargas on behalf of the appellant, Foothills of Fernley. This is a case, which I think comes loud and clear from the record, about the city constantly changing its procedures, constantly changing the bases upon which it was claiming to act in a targeted attempt to deprive my client of what it came to the city for to begin with, which was to build its development and to get water from the city, which it was assured it would have from the very first day it met with the city. If you look at the district court's decision and the basis upon which the district court said the city had authority to act, that was the first instance in which that authority had ever been identified as a basis for the actions taken by the city. It's undisputed that at the time the city passed these ordinances, it never identified any authority upon which it was acting. When it finally had to account for what authority it was taking action under at the time we filed our summary judgment motion, it identified two different provisions in Chapter 278 of the Nevada Revised Statutes, which pertains to zoning and planning. Neither of those provisions were ones ultimately relied upon by the district court, and when you look at both the provisions cited by the city and the provisions cited by the district court, it is clear that neither one of them provide any authority for the passage of these ordinances as the city would have this court believe. The very title of Chapter 278 is planning and zoning. It relates to the subdivision, the planning, the processes by which certain areas of the city are governed. The two ordinances which we are challenging, which are at issue, are ordinances of general applicability. These State law claims were brought as supplemental claims to your 1983 claim, is that right? They were, Your Honor, yes. Do you think that these claims had more substance than the constitutional claims? I think these in some ways do have more substance, but I think the constitutional claims are really premised upon the same acts which form the basis of the statutory challenges, because it's the lack of any study done by the city as to the need to raise the in lieu of fees for water or the availability for water, which forms the basis for a substantive due process claim. It's the lack of any grievance procedure in place at the time to challenge these actions, which is the basis of the procedural due process claim. It's the inability to provide any meaningful opportunity. But usually when a district court decides that there's no merit to the Federal claims, it dismisses all the Federal claims. What I've observed here is that most district court judges dismiss the State claims, let those State claims, you know, they have discretion not to assert supplemental jurisdiction. Certainly. But here the judge went on and went on to decide these particular claims, and I guess we'll have to take a look at them. But, you know, when I look at the constitutional claims, they seem to be they don't sort of stand out as really sort of grabbing you with such force. Well, I think they do, Your Honor, when you look at the facts underlying those claims. Maybe they're more specifically the failure to follow statutes, but there is no question when you look at the district court's analysis of the constitutional claims, the district court just sort of concluded without any analysis that they had met their burden because it's such a low standard that they would have to meet that they met it. Well, when you look at what they actually did, there's absolutely no evidence in the record to support either a challenge to a substantive due process claim that they had any basis on which to take these actions. But they assert an equal protection claim under both the U.S. and State constitutions. Correct. It's a rational basis. It is. But there's no basis identified in the record. There is absolutely no basis. There's a statement from the mayor who says, well, we thought that we should apply this to commercial differently than residential. There is absolutely no evidence in the record to support any finding. There was that statement was a statement made after the fact. At the time the decision was made, there was absolutely no evidence in the record to support the differential treatment between residential and commercial users at the time that Bill 59 was considered. I thought the reason for distinguishing between the two was the commercial don't use as much water as the residential. But there was no – there was absolutely no finding or evidence to support that. That was simply a statement made after the fact to justify actions taken. And there is absolutely no evidence in the record to support the notion that – Isn't that a judgment that city councils can make on what they know about the local situation? If you have a 40-acre alfalfa field that uses a certain amount of water and Walmart buys it and puts it in a parking lot, does the city council have to go through some sort of a –  I agree that the council has some discretion to decide when that's appropriate, but they have to exercise that discretion based upon some evidence in the record. And there was simply no evidence in the record at all to support the idea that commercial users should somehow be treated differently. Are you claiming that there's something defective about that quick whistle, 25-day statute of limitations on complaining about? Absolutely, Your Honor. And I think there's four separate reasons why the 25-day statute of limitations that the district court identified can't apply in this context. First, the city never pled statute of limitations as an affirmative defense. It was raised sua sponte by the district court in an order on the motion to dismiss. When the issue was raised by the district court, it identified two claims upon which it was looking at statute of limitations, the open meeting law claim and the claim with respect to the impact fees. It never said it was considering statute of limitations applying to the entire case. More importantly, under the United States Supreme Court case of Arizona v. California from 2000, they said when there is an affirmative defense of preclusion that has not been pled, courts should only raise that sua sponte in extraordinary circumstances, which we submit don't exist here. More importantly, on the 25-day statute of limitations, there was no grievance procedure in place for which my client could challenge the actions taken. The city had never identified the authority it was relying upon, which it now claims provided a 25-day statute of limitations, and there was no grievance procedure in place. Under the Rosado decision and other lines of authority, courts have held that you simply, a party cannot comply with a ---- They didn't have a second reading. They didn't have publication. They didn't have the hearings. That all of that was substantial compliance. And I understand you say that's not. That's absolutely not substantial compliance. And most importantly, the district court never even considered the ---- it's no surprise that in Nevada, as in most States, there's basic requirements for passage of an ordinance. Those are found in Chapter 266 of the Nevada Revised Statutes. The district court relied upon 278 and didn't even analyze whether the procedures under 266 had been followed. The city concedes that there were flaws in the process. And there were multiple flaws. We identified them in our brief. Scalia. It looked like kind of a poster boy for irregular adoption of an ordinance. Absolutely. We would absolutely agree that it's ---- I don't think there's a provision that was complied with. And when you look at State law on that point, the ---- if an ordinance is not properly followed, the procedures are not proper, that ordinance is void, not voidable. That's under the State v. Payne case. Does Arizona follow the substantial compliance? Nevada. I'm sorry. Nevada. Does Nevada? They do not, Your Honor. And that's the State v. Payne case that says if proper process is not followed in passage of an ordinance, it's void. They rely upon a 1966 Attorney General's opinion for the notion that substantial compliance is enough. When you look at that Attorney General's opinion, there was 99 percent compliance where they said ---- Let me ask you, though. If the statute of limitations properly applies here, why doesn't this just wipe out this claim? Because I don't ---- We're irrespective of whether or not they follow the procedures. Because there is ---- the district court never held that a statute of limitations would apply to the procedural challenges to the statute under Chapter 266. But if I'm not mistaken, it says any challenge. It says any challenge, but it never even analyzed the 266 procedural challenges, and there's no authority. Any challenge. It says any challenge has to be brought within 25 days. What more do you need? Because the ---- without a grievance procedure in place, there's simply no ability to bring a challenge. And without the city ever identifying the authority ---- Does your mind refuse to a grievance procedure, not filing a lawsuit? Well, but the city never identified the authority it was acting under, so how could my client have been clairvoyant to know? Let me ask you this. Is there a statute ---- is there a statutory requirement in Nevada that requires these local city councils to, in red lights, identify the statute under which they are acting? There's not a statute in Nevada, but case law, and this is the case out of Pima County, Arizona. There's a long line of authority. Well, is there a Nevada Supreme Court case that says, okay, city councils, when you guys adopt the statute, you have to stamp on there, you have to make it clear in bold letters, we're acting under Nevada statute X, Y, and Z. There's not a Nevada case on it, but it's in McQuillan on corporations as a generally accepted proposition of common law that a municipality or any body acting legislatively ---- There's no statute that says that. There's not. But it's implicit that, and it's well settled in McQuillan and other treatises, that a body has to identify the authority it's relying on. In response to Judge Goodwin's questions about the statute of limitations, you said that the district court acted improperly. How were you harmed? Because twofold. The district court acted improperly when it said that a 25-day statute of limitations applies after the fact. We never were told what authority the city was acting under. So for us to now be held to a statute of limitations under a law which was never identified constitutes great harm. There is clear law in Nevada, it's under Chapter 11, NRS 11.190, Sub 3, that says in the absence of a specific statute of limitations, the general statute of limitations for challenging statutes is a two-year statute. And we would submit that we've met that. Is it your position that the district court had no business raising the statute of limitations? Absolutely. I think if you look at State v. Arizona where they say preclusive affirmative defenses such as statute of limitations should only be raised in exceptional circumstances. So here's the district court, and I gather this is, if I'm not mistaken, wasn't Judge – the district court judge here Sandoval? It was, Your Honor. Wasn't he the former attorney general of the State of Nevada? Yes, Your Honor. I mean, the State of Nevada. Yes. He might have some sensitivity to Nevada law. He might – He raised the issue. That's all he did, and he invited the parties to address it. Well, he raised it, though, in the context of two specific claims. He raised it in the context of the open meeting law claim, which we conceded we didn't meet the statute on. And he raised it as far as 278B, which was the imposition of impact fees. In no way did he raise it with respect to any of the other claims. I want to take a – Once he raised the statute of limitations, don't you think that, you know, you might just check to see whether or not you've satisfied the statute of limitations with respect to all your State law claims, not the Federal claims, because they're not governed by the State law statute of limitations? And we submitted a brief as to why we did believe we met that, but – This particular State law. Yes. We submitted a brief as to why we felt we had met the statute of limitations. But certainly, when the district court identifies two claims upon which it wants to hear the party's position with respect to statute of limitations, we would brief that accordingly. I do want to address for a minute the issue of retroactivity with respect to Bill 43, because this is really a separate issue from what we've been talking about. The provisions of Bill 43 could not have been clearer in terms of what was required for compliance. Bill 43 said it shall apply to all new applications for tentative subdivision maps. It is undisputed that my client submitted an application for a tentative subdivision map as called for by that ordinance within the appropriate time and complied with that, and thus obtained rights to obtain water at the $5,000 in lieu of fees set by Bill 43. The City has now taken the position that it can change the law at any time. The City set the trigger with respect to Bill 43. The City said, here's what you have to do to comply with Bill 43 and get rights to water at the $5,000 in lieu of fee. File an application for tentative map. They set the trigger. If you accept their position that they could change the law at any time, that trigger would be meaningless. When you look at the record of the City, they talk about this grandfathering phase and phasing this in and doing this over time. Clearly, that was an effort in recognition of giving people rights who were in the process, which was my client. My client was the only entity who submitted an application for tentative map in compliance with Bill 43. There's no question that the change in Bill 59 hadn't been approved, had it? It had not been approved, but that was within the power of the City. And more importantly, Bill 43 said it's the application for tentative map which is important. They didn't, Bill 43 doesn't say you have to have an approved tentative map to get and the City set that trigger. They said an application for tentative map is all that's required. Do you want to save some time for rebuttal? I would like to save. All right. Thank you, Your Honor. May it please the Court. My name is Brent Colvett. I'm representing the City of Fernley. With me today is Paul Taggart, who is the City attorney. And with the permission of the Court, we're going to kind of split the argument up, and he will take more of the constitutional issues, and I'll address the State law issues. That's fine. With respect to the first issue that has been raised here, and that I would like to address, is to kind of give you a little background on the City of Fernley. The City of Fernley was incorporated in 2001, July of 2001. And at the time, it was experiencing an awful lot of growth. It was one of the fastest growing cities in the State as well as in the country. I actually grew up in Fernley when we played six-man football way back when. Now it's a city of 20,000 people. So the growth has been tremendous in that area. And one of the issues, as you might expect in the desert of Nevada, is water. So one of the issues that was always on the mind of the city, and even before that when it was a town, was how do you serve the city residents with the water when the resource is limited. There was a lot of knowledge of that. A lot of issues had been raised over time with that. The city council was very aware of those issues. They were involved in trying to utilize water out of the Truckee Canal, which comes out of the Truckee River, which is highly contested between the Pyramid Lake Paiute Tribe in that area. And a lot of... Yes, some of this... I know I have been in front of you, Judge Paez, on an issue similar to that not too long ago. Yes, this water. Water is a very good conduit for litigation as well as other things. But at any rate, during all of this time that we're talking about, the city was constantly being hit with new challenges to serve its citizens. And one of those issues was how do you provide water when people are saying you don't have it or you don't have the right to use it, even though you've acquired it. The city had a plan and a feeling that they had enough water to serve its citizens if they were able to utilize the surface water as well as the underground water. All of those things were being changed. There were suits by the tribe at that point. So as a result of all of that, things needed to change. And an ordinance that had been adopted when the town was in charge of just utilities and sewer, which was this Fernley Town Ordinance 4, suddenly needs to be addressed as the city is growing and maturing and growing way too fast perhaps at that point in time. So they changed the statutes. They changed all of these things. Now, the thing to remember is all of these statutes or ordinances, excuse me, are under their development code. So when it's argued that they don't know what law or what authority is being used to enact an ordinance in this case, that's just incomprehensible to me because these ordinances dealt with the subdivision of land and the subdivision of property within the city boundaries. In order to get a subdivision, you had to do master plan changes, which they did in this case. They had to get a zoning change, which they did in this case. And they had to apply for a subdivision all under Chapter 278. All of these ordinances that they're concerned with are under that authority. And there is no requirement under State law that anybody announce ahead of an ordinance enactment that it is being enacted to this under the authority granted by Chapter 278 or specifically 278.whatever. Well, they made their application in May of 2004, wasn't it? And it was approved in August, August 4. Was that the approval of the first application for a master plan zoning map and so on? Right. That's one step in the process. That's correct. What they did is ---- At that time, the water requirement was $1,000 per acre foot. That's correct. August 4. Then on August 10, they firmly adopted the new ordinance, 43, that upped the ante to $5,000. That's correct. That's correct. And they can do that, apparently. The map had been approved, but they hadn't gotten a go-ahead for any building permits or anything. No. I think there's a little disconnect there. There were master plan changes and zone changes which were approved ahead of that, but the actual subdivision map itself, which would trigger the need to have water to that property, did not yet occur. That application process hadn't gone forward. So it was a multi-step process. You first had to get the master plan and the zoning in place, and then the applicant had to come in with the actual subdivision map. And at that point in the process, Chapter 278 requires that a subdivider show that they have adequate water to serve that subdivision. In fact, the state engineer of the state of Nevada has to sign off on that. None of that had yet occurred when the city was changing the ordinances to change the fee from $1,000 in lieu of to the $5,000, and then ultimately to say, look, we need you to bring the water to us. We can't guarantee service without it. When was the subdivision map application filed in connection with the two buildings? The subdivision map was actually filed kind of in between the two ordinances, 43 and 59. It had not been filed when 43 was adopted. It was filed after that, about, actually about nine days before the effective date of 59. And why didn't 59, why wasn't it grandfathered in under 59? They changed the grandfathering provisions under Chapter, or when they adopted 59, and they said that you, in order for the previous $5,000 fee to apply, you actually had to have an approved subdivision at that time, and they didn't fit into that category. Your opponent there just said all that was required was an application. Under 43. That's correct. But under 59, they changed the grandfathering to say that it applied to approved maps. Okay. So there was a, and that's part of their argument, that you change the rules on us in the middle of this, the game, and that's the vested rights issue and the other arguments that Mr. Taffer made. How do you respond to all these technical arguments about the city council didn't meet, you know, the requirement for a business plan, there's no grievance procedure and the statute of limitations? The business plan is only required under one of the chapters that they cite, see Chapter 230. Oh, God, my brain is going. I know. It's difficult to keep all these little details. At any rate, under that provision, there is a business plan. That's a business impact statement has to be prepared and all of that. Under Chapter 278, which we contend is where these ordinances fall, there is no such requirement and Chapter 278 enactments are specifically exempted from the requirements of having a business impact statement and study and all of that. And what you're dealing with here is not an impact fee. You're basically dealing with selling an asset of the city to a developer for a price. And that's raising the price or taking it away from the market altogether, as they did with the ultimate ordinances, not imposing an impact fee. They have to go out and require the asset to bring to the table when they develop. It's just like buying the land. You have to also get the water. And that's our position. As to the deficiencies in the ordinances and the enactment process, yeah, there were deficiencies. I can't contend that there weren't. But they waited over two years to challenge those deficiencies when it became apparent that they weren't going to get their subdivision or convince the city to give them the water at any price. So you have the 25-day statute of limitations, which is under Chapter 278. It's our position that those ordinances at issue were enacted under Chapter 278. This is all part of the planning zoning subdivision process. And this is an ordinance that affected that process. And under that 25-day statute, you had to bring the action in that period of time. Is there a grievance procedure? No, not specifically. But there is under that ordinance. It says you must challenge in court within 25 days of any final action by the city. So do you understand that statute of limitations to, if it applies, to bar any State law claim that's advanced here? I do, Your Honor. I think that under the circumstances as Pledd it does. It didn't bar all of them because the Court didn't dismiss all of them in the complaint. What happened was that there was a stipulation to dismiss the remaining State law claims so that this appeal could go forward. So the ones that were actually that he applied it to? Were dismissed. I see. Properly under the statute of limitations. That's right. In other words, could the State law claims that the district court judge dismissed, assuming the statute of limitations applies, could those claims be resolved by the statute of limitations defense without getting to any of this other stuff? I believe it could, Your Honor, under the facts of this case, yes. Now, I'm taking a lot of my partner's time here, so. That's all right. I'll give him some time. Just finish up your point. Well, I'm basically there, Your Honor. I think the statute takes care of those State law claims that were asserted under the statutes, and the Court properly ruled on those. And I'll yield to Mr. Taggart. Good morning, Your Honors. For the record, Paul Taggart, and I am the city attorney of the city of Fernley. On the constitutional issues, the retroactivity argument, we think this is simply a different way of looking at the vested rights claim. And it really the way to understand it is that this applicant has never requested a building permit. And if you look at the vested rights cases, they all look at that building permit as a trigger date. And then they question, is that the date we use definitively? The Nevada case on point, Walmart, well, Walmart discusses this. And the Nevada cases say that the building permit is indicative of when no discretionary acts can be done by the government anymore. And that's indicative of when a vested right occurs. This application, these applicants aren't even close to getting to building permit stage. And our point is that when they come in for a building permit, they will be told what the rules are for utility service to that home. That hasn't come up yet. So prospective from today even will be the question of what rule applies to that building permit issuance and to that utility service. So this isn't a retroactive application. They had never acquired vested rights. They still, in our view, have not acquired vested rights because they don't have building permits yet. So we are still at liberty to make adjustments to fee structures. How far did they get in the process? They had filed a tentative map application, which is the application to divide land. And then that application has a series of conditions that have to be satisfied before it can be approved. So they had filed that tentative map application, but that had not been approved yet. And the discretionary acts of the government occur through the approval of that as well as a series of other items. What's the cost involved up to that point on the developer? Well, substantial, no doubt about it. I think if you look at the record at page 25 of our brief, their representatives were present at these meetings. And this is why we think that the arguments about the technicalities of adopting the ordinance are not as strong as it may sound. Their representatives were at the hearing. They indicated how much money it would cost them if we made this change. And they understood that that change would affect them. I must respond to the question about, you know, is this a poster boy for how not to adopt an ordinance. We have not responded in full to these questions about compliance with the ordinance because the statute of limitations throws this case out. The statute of limitations operates as a waiver of sovereign immunity. If that waiver does not exist, no State law claims can be brought against firmly in this matter. So we have not fully talked about what occurred. But the nature of what happened is that we had an agenda item. And the agenda item talked about the changing of the in lieu of ordinance or the in lieu of fee. The mayor read the agenda item. The agenda item language wasn't exactly the same as what was on the title of the ordinance. We think there was absolute notice, based upon the language in the agenda, of what was being done. They claim that we had to read the exact language from the title instead of reading the language out of the agenda. Now, that's the kind of combing that I think can be done after the fact of any adoption of any ordinance by any governing body. Did you do everything exactly right? So we're not prepared to admit that this was a substantial variation from the procedure. And I think Judge Sandoval addressed that in his order as well. On the equal protection argument, I think the Court's already addressed that pretty squarely. There is no obligation of a governing body to indicate what statutory basis it's relying upon. And in the Heller case that we've cited to, the Supreme Court has said that there is no requirement for that to be done and that any justification, any reasonable justification, can be adopted by the Court to understand what the legislative body was doing. And I think you have to understand that the City Council has a historic knowledge of what's occurring in its city. And when an ordinance comes before it, it is using that knowledge, that institutional knowledge that it's had from adopting ordinances over the past. And so all of that information needs to be understood as what the basis for that City Council's decision was. Thank you, Your Honor. Any questions? Okay. Yes, you had about 30 seconds, but I'll give you another minute. I'll give you 1 minute and 32 seconds. Thank you, Your Honor. Simply because there is a perceived crisis on water is no excuse for not following the law. I heard again for the first time a new provision upon which the city claims to be acting. Now they say we're acting under the development code. There's no question that this was not brought under 278. If this was brought under 278, there are specific procedures that would have had been followed. Notice would have had to been directed by mail to the landowners. That was not done. There are certain things with respect to it being published under 278. It was never published under 278. This was brought under 266. There is no question about it. There's no authority under 278 for enacting ordinances relating to water, as they have here. The city, what I heard, effectively concedes that we complied with Bill 43, but says that it has the power to go back and retroactively change the law at any point up until the time you pull a building permit. In response to Your Honor's question about why that is so implausible, developers, as is the case with my client, expend millions of dollars in their project up until the time that a building permit is pulled. When you look at the Walmart case, the Walmart case was a vested rights case, which we think is very different than the context we have here with Bill 43, where we expressly complied with the actual language of Bill 43 and what the city required. As I said, if you apply for a tentative subdivision map, you get water at the $5,000 in lieu of fee. That's exactly what we did. The Walmart case actually supports our position. The Walmart case said a builder can acquire vested rights short of pulling a building permit for the very reasons you identified, Your Honor, because if, in fact, the city or any municipality could keep changing its policies up until the time a building permit is pulled, you'd have chaos. No developer would do business in that climate. That is the very essence of why a trigger was put. When you look at the record of this, the city was discussing grandfathering and phasing these changes in over time, and they said we want this to apply to those who submit a tentative subdivision map application. We complied with that. You heard they conceded that. With respect to how far along we were in the process, we actually have an approved tentative map. There's no question about that. The whole notion of vested rights we would submit is an attempt to put us in the context of not having any rights when we expressly complied with Bill 43. Okay. Thank you. Thank you, Your Honor. Thank you. Foothills of Fernley versus City of Fernley will be submitted.
judges: Carney, Goodwin, Paez